UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHARNEY AVRIL MUTSCHLER,

     Plaintiff,

v.                                    Case No. 8:25-cv-2243-SDM-SPF

USED AUTO OUTLET INC.
d/b/a WORLD AUTO SOUTH;
AUTO LOUNGE OF FLORIDA;
DAVID COHEN; MUNEEB ZAHEER;
AMIR RAUD; and GM FINANCIAL,

     Defendant.

_____/

## REPORT AND RECOMMENDATION

In August 2024, *pro se* Plaintiff Sharney Avril Mutschler purchased a 2021 BMW from Defendant Used Auto Outlet Inc. d/b/a World Auto South (the "Dealer") in Pompano Beach, Florida. To finance the deal, Plaintiff entered into a Retail Installment Sale Contract (the "Contract") and related agreements with the Dealer, who immediately assigned and transferred its entire interest in the Contract to Defendant AmeriCredit Financial Services, Inc. d/b/a GM Financial ("GM Financial"). At this juncture, before the Court is GM Financial's Motion to Compel Arbitration and Stay (Doc. 8). Plaintiff filed an Amended Response in opposition to the motion (Doc. 19) and, with leave of Court, GM Financial filed a reply (Doc. 18). For the reasons explained below, the undersigned recommends that GM Financial's motion be GRANTED.

### I.    BACKGROUND

Plaintiff alleges that she made an $8,000 down payment to the Dealer and signed the Contract to finance the BMW's remaining purchase price (approximately $51,000) (Doc. 1-1

("Cmplt.") at ¶ 2).  In her Complaint, she claims that the Dealer pressured her into signing the Contract without allowing her to review it beforehand (*Id*. at ¶ 9).  According to Plaintiff, the BMW had electrical issues almost immediately and broke down completely within 60 days (*Id*. at ¶ 10).  Plaintiff contends she attempted to rescind the Contract to no avail, so in July 2025, she sued Defendants in the Tenth Judicial Circuit in and for Polk County, Florida, her county of residence.  Her Complaint alleges breach of contract, fraud, successor liability, and violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq*., Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq*., the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*., and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. (*Id*. at ¶¶ 14-46).

GM Financial removed the case to federal court in August 2025 and, soon after, moved to compel arbitration (Docs. 1, 8).[1]  Its motion attaches the declaration of Adrian Jones, GM Financial's Assistant Vice President of Consumer Services.  Jones attests that GM Financial purchased Plaintiff's Contract from the Dealer, who assigned all its rights and interests in the Contract to it (Doc. 8-1 ("Jones Decl."), Ex. 3 at 6).  GM Financial contends that Plaintiff signed the Contract and a separate Arbitration Agreement when she purchased the BMW and that both agreements include near-identical arbitration provisions (the "Arbitration Provisions") that govern Plaintiff's claims (Jones Decl. at ¶¶ 8-9).

The Contract's arbitration provision reads:

> **ARBITRATION PROVISION**
>
> **PLEASE REVIEW – IMPORTANT – AFFECTS YOUR LEGAL RIGHTS**

---

[1] Counsel for Defendants Auto Lounge of Florida, David Cohen, and Muneed Zaheer filed a notice of settlement with Plaintiff (Doc. 9) the same day GM Financial moved to compel arbitration.

2

**1.    EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**

**2.    IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**

**3.    DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the artbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. . . . You or we may choose the American Arbitration Association (www.adr.org) or the National Arbitration and Mediation (www.namadr.com) as the arbitration organization to conduct the arbitration. . . . Any arbitration under this Arbitration Agreement shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) and not by any state law concerning arbitration. . . .

(Jones Decl., Ex. 1 at 6, Ex. 2 at 1).

Under the Arbitration Provisions, GM Financial moves to compel arbitration. Plaintiff opposes the relief.

## II.    LEGAL STANDARD

Arbitration is fundamentally "a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (quotation and citation omitted). The Federal Arbitration Act

("FAA") provides, in relevant part, that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract," and that a court shall order parties to proceed to arbitration if it finds they are subject to a valid arbitration agreement. 9 U.S.C. §§ 2, 4.[2] The FAA requires that a court—upon motion by a party to an action in federal court—stay the action if it involves an "issue referable to arbitration under an agreement in writing." 9 U.S.C. § 3.

These FAA provisions reflect a "liberal federal policy favoring arbitration agreements." *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (quotation and citations omitted); *see also Preston v. Ferrer*, 552 U.S. 346, 353 (2008) (same); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219–21 (1985) (discussing the FAA's legislative history and the FAA's purpose of ensuring judicial enforcement of private arbitration agreements). Consistent with this policy, the FAA requires that courts "'rigorously' ... 'enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted.'" *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018) (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013)); *see also Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1326, 1329–30 (11th Cir. 2014) (same).

---

[2] Though neither party addresses the matter, the "Applicable Law" section of the Contract states that "Federal law and the law of the state of Florida apply to this contract." (Jones Decl., Ex. 1 at 2). The Arbitration Provisions state: "Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) and not by any state law concerning arbitration." (Jones Decl., Ex. 1 at 6, Ex. 2 at 1). Because the parties clearly intended for the FAA to control the Arbitration Provisions, and because the financing of the BMW involved capital sources from outside of Florida (involving interstate commerce), the FAA applies. *Palm Court NH, LLC v. Dowe*, 336 So.3d 735, 738 (Fla. 4th DCA 2022). In any event, the same three-step process explained below applies when considering a motion to compel arbitration under either Florida's Arbitration Code, Fla. Stat. § 682.01, *et seq.*, or the FAA. *See Shotts v. Winter Haven, Inc.*, 86 So.3d 456, 464 (Fla. 2011).

In determining whether to compel arbitration under the FAA, courts consider: (1) whether there is a valid agreement to arbitrate between the parties, (2) whether the agreement covers the dispute, and (3) whether the right to arbitrate has been waived. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002); *Lane v. Gould & Lamb, LLC*, No. 8:14-cv-3116-T-30AEP, 2015 WL 3609108, at *1 (M.D. Fla. Apr. 21, 2015). The party resisting arbitration ultimately bears the burden of showing that the arbitration provision in question should not be enforced, *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91–92 (2000), and any doubt related to arbitrability must "be resolved in favor of arbitration." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

While the FAA controls the Arbitration Provisions, the question of whether a binding contract to arbitrate exists at all, and, if so, whether there are any viable defenses to enforcing it, is generally determined by state contract law. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281 (1995) ("States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any contract.'") (quoting 9 U.S.C. § 2); *Cartagena v. Martino-Villanueva*, 619 F. Supp. 3d 1145, 1156 (M.D. Fla. 2022) ("Since arbitration clauses are based in contract, courts generally apply state contract law to determine the scope and enforceability of an arbitration clause[.]") (citing *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 183 (2019)).

## III.    DISCUSSION

GM Financial submits a written agreement executed by Plaintiff that contains a broadly worded arbitration provision (Jones Decl. at Ex. 1, Ex. 2). In short, it contends that a valid agreement to arbitrate exists, and Plaintiff's claims are subject to it (Doc. 8). Plaintiff

counters that the Arbitration Provisions are unenforceable and unconscionable; her claims fall outside the scope of the Arbitration Provisions; she timely attempted to rescind the Contract; she revoked the power of attorney granted to the Dealer under the Contract; and GM Financial waived enforcement of the Arbitration Provisions by participating in this litigation (Docs. 11, 19).

### A.   Existence of a Valid Arbitration Agreement and Unconscionability

Plaintiff argues that the Arbitration Provisions are unenforceable because they are "buried in a standard-form adhesion contract and w[ere] not knowingly or voluntarily agreed to by Plaintiff." (Doc. 11 at 2).  Relatedly, she contends that the Arbitration Provisions are unconscionable (Doc. 19).  Plaintiff cites *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681 (1996), which stands for the proposition that contract defenses available under state law may be applied to invalidate arbitration provisions without contravening § 2 of the FAA.  517 U.S. at 686-87.

The Court rejects Plaintiff's suggestion that the Arbitration Provisions are unenforceable because there was no meeting of the minds.  Record evidence demonstrates that Plaintiff and the Dealer (and GM Financial, by assignment) agreed in writing to arbitrate any claim or dispute that "arises out of or relates to" the purchase and financing of the BMW (Jones Decl., Ex. 1 at 6, Ex. 2 at 1).  Page two of the Contract states: "**Agreement to Arbitrate:**  By signing below, you agree that, pursuant to the Arbitration Provision on page 6 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action.  See the Arbitration Provision for additional information concerning the agreement to arbitrate." (Jones Decl., Ex. 1 at 2).  Plaintiff signed beneath this paragraph. The Contract's Arbitration Provision is a standalone section at the top of the page, with this

heading in bold, all capital letters: "ARBITRATION PROVISION  PLEASE REVIEW –

IMPORTANT – AFFECTS YOUR LEGAL RIGHTS."  Plaintiff signed the page (*Id.*, Ex. 1

at 6) and a separate Arbitration Agreement (*Id.*, Ex. 2).  On this record, nothing supports

Plaintiff's argument that the Contract is void because the Arbitration Provisions were buried

in fine print.[3]  Additionally, Plaintiff presents no evidence supporting her argument that she

did not have the opportunity to read the Contract and Arbitration Agreement before signing

them.

Having determined that a valid arbitration agreement exists, the Court turns to

Plaintiff's alternative contention that the Court cannot enforce it against her because it is

unconscionable (Doc. 19 at 1).  A contract must be both procedurally and substantively

unconscionable for a court to find it unenforceable.  *See Basulto v. Hialeah Automotive*, 141 So.

3d 1145, 1158-59 (Fla. 1999).  While procedural and substantive unconscionability are

interdependent concepts, they do not have to exist to the same degree.  *Id.* at 1160.  To

determine if a contract is procedurally unconscionable, a court looks to the circumstances

surrounding the transaction to determine whether the complaining party had a "meaningful

choice" at the time the contract was formed.  *Id.*  Courts consider whether the complaining

---

[3] Similarly flawed is Plaintiff's suggestion that GM Financial, as assignee, lacks authority to enforce the Contract and Arbitration Agreement.  Under Florida law, an assignee may enforce arbitration agreements contained in the contracts to which it is assigned. *Kong v. Allied Professional Ins. Co.*, 750 F.3d 1295, 1303 (11th Cir. 2014) ("Florida law treats arbitration as a 'remedial mechanism' that is included in any assignment."); *Scherer v. Hyundai Cap. Am., Inc.*, No. 22-cv-61014-DIMITROULEAS/STRAUSS, 2022 WL 17488420, at *4 (S.D. Fla. Nov. 22, 2022) ("the term 'party' – for purposes of enforcing an arbitration provision – should not be interpreted to exclude the assignee of a contracting party.").  The Dealer assigned the Contract and Arbitration Agreement to GM Financial soon after execution (Jones Decl. at ¶ 10 and Ex. 3).  And, by their terms, the Arbitration Provisions bind the Dealer and its "employees, agents, successors or assigns[.]" (*Id.*, Ex. 1 at 6, Ex. 2).  GM Financial is entitled to enforce the arbitration provisions as assignee.

party had a realistic opportunity to bargain the contract's terms, whether the terms were presented on a "take-it-or-leave-it" basis, and whether the party had a reasonable opportunity to understand the contract's terms. *See Hodgin v. Intensive Care Consortium, Inc.*, 666 F.Supp.3d 1326, 1330 (S.D. Fla. 2023). To determine whether a contract is substantively unconscionable, a court must look to the contract itself and decide if the terms are so "outrageously unfair" as to "shock the judicial conscience." *Id.* The party seeking to avoid the arbitration provision bears the burden of establishing unconscionability; if either the procedural or substantive component is lacking, the arbitration clause is not deemed unconscionable. *Fonte v. AT&T Wireless Servs., Inc.*, 903 So.2d 1019 (Fla. 4th DCA 2005).

Procedural unconscionability focuses on the relative bargaining power of the parties. *Romano v. Manor Care, Inc.*, 861 So.2d 59, 62 (Fla. 4th DCA 2003). Plaintiff contends that the Contract is an unlawful adhesion contract and therefore unenforceable. An adhesion contract is a "standardized contract form offered to consumers of goods and services on essentially [a] 'take it or leave it' basis without affording [the] consumer [a] realistic opportunity to bargain and under such conditions that [the] consumer cannot obtain [the]desired product or services except by acquiescing in the form contract." *Powertel, Inc. v. Bexley*, 743 So.2d 570, 574 (Fla. 1st DCA 1999) (quoting *Black's Law Dictionary*, 6th ed. (1990)). An adhesion contract in and of itself does not require a finding of procedural unconscionability. There must be evidence that the buyer lacked a meaningful choice, such as the seller using deceptive sales practices or hiding important contract language in fine print. *See Howse v. DirecTV, LLC*, 221 F.Supp.3d 1339, 1342-43 (M.D. Fla. 2016) (explaining interplay between adhesion contract and procedural unconscionability analysis).

Here, Plaintiff suggests she could not negotiate the Contract's terms and had no choice but to accept the Contract and be bound by it or forego her purchase of the BMW. However, nothing supports this. The Contract is well organized with clearly labeled sections and subsections for different topics. Plaintiff offers no evidence that she struggled to understand what she signed. And she could have walked away from the deal and attempted to purchase a car from a dealer that did not require its customers to submit claims to arbitration. In other words, there is no evidence that Plaintiff lacked a meaningful choice; the Court declines to find procedural unconscionability.

For substantive unconscionability, courts consider whether the disputed terms are unreasonable or "so outrageously unfair as to shock the judicial conscience." *See Fonte*, 903 So.2d at 1025. For example, if the Arbitration Provisions limit available remedies, exclude punitive damages, prevent equitable relief, impose substantial costs, or lack mutuality of obligation regarding the arbitration of disputes, the agreement may be substantively unconscionable. *Id.* Here, Plaintiff simply offers no legal or factual basis for the Court to find the Arbitration Provisions substantively unconscionable. Plaintiff's unconscionability argument fails.

### B. Scope of Arbitration Provisions

Having determined that an agreement to arbitrate exists and that it is not unconscionable, the Court addresses Plaintiff's contention that her claims fall outside the scope of the Arbitration Provisions. Specifically, she argues that her "claims involve statutory rights, lien release, and credit reporting (profit/loss charge-off), which are outside the scope of any arbitration clause." (Doc. 19 at 2). The Court disagrees.

In the Arbitration Provisions, Plaintiff agreed that "any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under the Arbitration Provision, and the arbitrability of the claim or dispute)" between her and the Dealer (or its assigns), "which arises out of or relates to" Plaintiff's "credit application, purchase or condition of [the BMW] . . ." shall be submitted to arbitration (Jones Decl., Ex. 1 at 6, Ex. 2 at 1).  To get around this broad arbitration provision for her tort claims, Plaintiff cites *Seifert v. U.S. Home Corp.*, 750 So.2d 633 (Fla. 1999).

In *Seifert*, the Florida Supreme Court, in the context of a motion to compel arbitration under the FAA, noted that "the mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one 'arising out of or relating to' the agreement."  750 So.2d at 638.  Instead, for a tort claim to "arise out of or relate to" an agreement, it must, "at a minimum, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself."  *Id*. (citing *Hersman, Inc. v. Fleming Cos., Inc.*, 19 F.Supp.2d 1282, 1287 (M.D. Ala. 1998), *aff'd*, 180 F.3d 271 (11th Cir. 1999)).

Courts look to a plaintiff's complaint to determine if the allegations concern matters covered by an arbitration provision.  *See Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 386 (11th Cir. 1996).  In doing so, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration."  *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989).  The presumption of arbitrability can only be overcome if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that

10

covers the asserted dispute." *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).  Doubts are resolved in favor of arbitration.  *Id.*

Here, Plaintiff's common law claims of fraud, breach of contract, and successor liability arise out of or relate to either the condition of the BMW or the financing of the transaction, because they require the Court to construe the Contract.  Additionally, Plaintiff's claims that Defendants violated FDUTPA, TILA, FCRA, and FDCPA – all broadly-construed consumer protection statutes – fall within the gamut of the Arbitration Provisions for the same reason.[4]  Plaintiff's one-sentence argument to the contrary is insufficient to defeat the strong presumption in favor of arbitrating Plaintiff's claims (Doc. 19 at 2).

Additionally, the plain language of the Arbitration Provisions states that issues subject to arbitration include "the interpretation and scope of this Arbitration Provision, any alleged waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute." (Jones Decl., Ex. 1 at 6).[5]  This is commonly referred to as a delegation clause, a provision in an arbitration agreement that vests the authority to determine threshold issues of arbitrability in an arbitrator.  *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 69-70, n.1 (2010).  But "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (quotation omitted).  Here, the parties specifically delegated the

---

[4] Plaintiff waived her right to participate in a class action or class arbitration regarding any claim against Defendants under the Arbitration Provisions (Jones Decl., Ex. 1 at 6, Ex. 2 at 1).  Plaintiff offers nothing to convince the Court that the right to participate in class action suits is non-waivable under the statutes at issue.

[5]  The Arbitration Agreement states that issues to be arbitrated include "the interpretation and scope of this Arbitration Agreement, and the arbitrability of the claim or dispute." (Jones Decl., Ex. 2).

questions of interpretation, scope, and waiver of the Arbitration Provisions to the arbitrator, and Plaintiff does not challenge the enforceability of this provision. *See Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1286 (11th Cir. 2022) (finding that an enforceable delegation provision requires both clear and unmistakable evidence of parties' agreement to delegate questions of arbitrability to an arbitrator, and that the party resisting arbitration specifically challenges the delegation provision).[6]

The Arbitration Provisions expressly incorporate the consumer arbitration rules of the American Arbitration Association ("AAA") and the National Arbitration and Mediation Association ("NAM"), both of which authorize the arbitrator to decide threshold issues of arbitrability (*see* Doc. 8, Exhs. B, C). Under the plain language of the Arbitration Provisions and their reference to AAA and NAM rules, the parties clearly and unmistakably agreed that the arbitrator should decide the enforceability, scope, and applicability of the Arbitration Provisions to Plaintiff's claims. *Terminix Intern. Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332 (11th Cir. 2005) (finding clear and unmistakable evidence of parties' agreement for arbitrator to decide issues of scope and validity of arbitration agreement where parties incorporated AAA rules into their agreement).

---

[6] Plaintiff's argument that GM Financial waived its rights to pursue arbitration because it removed Plaintiff's case to federal court and then moved to compel arbitration lacks support. In defending Plaintiff's claims against it, GM Financial did not act inconsistently with its right to arbitrate. In any event, as explained above, the parties clearly delegated the issue of waiver to the arbitrator. The same is true of Plaintiff's arguments regarding contract rescission, power of attorney, and her settlement with other Defendants. *See Dunn v. Global Trust Mgmt., LLC*, No. 21-10120, 2024 WL 4379966, at *10 (11th Cir. Oct. 3, 2024) ("[O]ur analysis focuses on the delegation provisions because 'a challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing' a delegation provision.") (quoting *Rent-A-Center*, 561 U.S. at 72).

## IV.    CONCLUSION

It is **RECOMMENDED**:

(1) Defendant GM Financial's Motion to Compel Arbitration and Stay (Doc. 8) be GRANTED.

(2) The Court direct Plaintiff and GM Financial to participate in arbitration consistent with the Contract and Arbitration Agreement;

(3) The Court stay this case pending completion of arbitration. *See* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 478-79 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceedings."); and

(4) The Court require the parties to notify the Court promptly upon completion of the arbitration.

**IT IS SO REPORTED** in Tampa, Florida, on January 7, 2025.


SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE

13

**NOTICE TO PARTIES**

Within fourteen days after being served with a copy of this Report and Recommendation, any party may serve and file written objections to the proposed findings and recommendations or request an extension of time to do so. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. Failure of any party to timely object in accordance with the provisions of § 636(b)(1) waives that party's right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions contained in this Report and Recommendation. 11th Cir. R. 3-1.